ANDREW HAUG, Sr.

*v.*

LULU HAUG, Admx.

*Opinion filed December 18, 1901.*

1. PARTNERSHIP—*a partnership may exist under a verbal agreement.* Written articles of agreement are not necessary to constitute a partnership, but a partnership may exist under a verbal agreement or it may be implied from circumstances.

2. SAME—*contribution of capital not essential to partnership.* A partnership may exist although the whole capital is contributed by one party and the other contributes only his time and skill in the purchase and sale of the commodities.

3. SAME—*the fact that firm name is used is a significant circumstance.* That parties do business together under a firm name, coupled with the fact that each gives his personal attention to the business, raises a strong presumption that they are partners.

4. APPEALS AND ERRORS—*when findings of a chancellor will not be disturbed.* The chancellor's findings of fact from conflicting oral testimony will not be disturbed, on appeal, unless clearly against the preponderance of the evidence.

*Haug* v. *Haug,* 90 Ill. App. 604, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Jasper county; the Hon. TRUMAN E. AMES, Judge, presiding.

The Appellate Court, in their opinion deciding this case, make the following statement of facts, to-wit:

"Appellee filed her bill in chancery in the circuit court of Jasper county against appellant to require him to account to her as administratrix of the estate of Martin Haug, deceased, for a claimed co-partnership interest of deceased in a mercantile business, carried on and conducted for several years by appellant and deceased as co-partners at Hunt City under the name of 'A. Haug & Son,' and which partnership terminated by the death of Martin Haug February 18, 1899.

"The bill avers, that the oratrix is the widow of the deceased, and that, since his death, appellant has retained possession of the assets of the late firm, consisting of goods on hand and credits of the firm amounting to several thousand dollars, and is disposing of the goods, and commingled other goods with them, and is collecting the credits of the firm, and refuses to file any inventory of the property, or to cause it to be appraised, but is using it as his own property, and sets up and insists that it is his own individual property, and that his deceased son, Martin, never was a co-partner with him, or in anywise interested in the property.

"The bill prays for an accounting of the partnership affairs, also for an injunction and receiver.

"The answer of the respondent to the bill denies, that any co-partnership ever in fact existed between the deceased and himself, but admits that respondent refuses to file an inventory of the property of the alleged firm, and admits that he refuses to render any account of it, and sets up and claims all of the property to be his own individual property.

"A replication was filed to the answer, and the testimony of upwards of forty witnesses was taken in open court, and the court rendered a decree, finding that the deceased and appellant were co-partners, and that appellant should account to appellee for one-fourth of the partnership assets after payment of the debts of the firm, and that appellant pay the costs."

An appeal was taken from the decree, so rendered by the circuit court, to the Appellate Court, and the Appellate Court has affirmed the decree. The present appeal is prosecuted from such judgment of affirmance.

DAVIDSON & ISLEY, for appellant.

MAXWELL & JONES, and FITHIAN & KASSERMAN, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The appellant, Andrew Haug, Sr., was the father of Martin Haug, deceased, whose widow and administratrix filed this bill for an accounting. It is undisputed, that the appellant and his son, Martin, did business together under the firm name of "A. Haug & Son" for a number of years. They dealt, as such firm, in hardware, furniture and agricultural implements.

There is no evidence in the record of any express contract of partnership, or written agreement of partnership, between the parties. It is well settled, however, that written articles of agreement are not necessary to constitute a partnership, but that a partnership may exist under a verbal agreement. (*Bopp* v. *Fox*, 63 Ill. 540). The existence of a partnership may be implied from circumstances. (*Kelleher* v. *Tisdale*, 23 Ill. 405). A partnership may arise out of an arrangement for a joint business, wherein the word "partnership" may not have been used. "If there is such a joinder of interests and action as the

law will consider as equivalent, and regards as in effect, constituting a partnership, it will give to the persons so engaged all the rights, and lay upon them all the responsibilities, and to third persons all the remedies, which belong to a partnership." (*Morse* v. *Richmond*, 6 Ill. App. 166).

It is also well settled that when, by agreement, persons have a joint interest of the same nature in a particular adventure, they are partners *inter se*, although some contribute money and others labor. Such a partnership may well exist, although the whole capital is in the first instance advanced by one party, and the other contributes only his time and skill and ability in the selection and purchase of the commodities. (*Robbins* v. *Laswell*, 27 Ill. 365).

The most significant circumstance, bearing upon the question whether or not there was a partnership between the appellant and his deceased son, is the fact that they did business together under the firm name of "A. Haug & Son." The proof shows conclusively, that the son here referred to was the deceased son, Martin, and that the two members of the firm of A. Haug & Son were the appellant and his son, Martin. The fact, that parties do business together under a firm name, is a circumstance which, although not conclusive by itself, may be considered by a court or jury, in connection with other circumstances, in determining the question whether or not a partnership exists between the parties. (*Fulton* v. *Maccracken*, 18 Md. 544).

In deciding this case the Appellate Court well say in their opinion: "The fact, that the business was conducted in the name of 'A. Haug & Son,' coupled with the fact that Andrew Haug and his son, Martin, each personally gave his attention to the business, raises a strong presumption that they were co-partners in fact, and, while such evidence alone is not conclusive, we are not able to say that it, with other strong evidence, produced by ap-

pellee tending to establish the fact of a partnership, is overcome by appellant's witnesses, though more numerous than the witnesses produced by appellee. We are unable to say the finding of the chancellor is not supported by the greater weight of the evidence."

It was shown in evidence, that the appellant, in the lifetime of his son Martin, spoke of the latter as being his partner. In a suit brought against the firm of A. Haug & Son, the appellant testified that he and his son, Martin, were partners. Witnesses testified that they were told by appellant that his son, Martin, was his partner.

After the decease of Martin Haug, the appellant stated to several persons, who approached him upon the subject of buying goods, that he was not prepared to do anything in that direction until he effected a settlement with the widow of his son. In this connection he also stated that he did not know whether his son's widow, the present appellee, would continue in the business or not.

On the other hand, quite a number of witnesses say that they were told by Martin Haug in his lifetime that he was not a partner in the firm. On some occasions when this statement was made by Martin, it was in answer to the applications of customers who desired to purchase goods upon credit. In such cases he would not infrequently refer them to his father, saying that he had no interest in the matter.

It thus appears, that the testimony as to the existence of the partnership is conflicting. It is unnecessary for us to examine and discuss this testimony. Upon the trial below, all the witnesses upon both sides testified orally. They were seen by the chancellor, and their manner of testifying and their credibility were considered by him. The question of the existence of a partnership was a question of fact. This case, therefore, is one which calls for the application of the well settled rule, often announced by this court, that, "when the trial court has an opportunity of seeing the witnesses and of hearing their

testimony as it is delivered orally, the findings of such court upon mere questions of fact, where the testimony is conflicting, will not ordinarily be disturbed on appeal, unless such findings are clearly and manifestly against the preponderance of the evidence." (*Lane* v. *Lesser*, 135 Ill. 567; *Williams* v. *Thwing Electric Co.* 160 id. 526; *Burgett* v. *Osborne*, 172 id. 227). We have examined the testimony carefully and are unable to say that it preponderates in favor of the appellant. As the courts below have found the facts to be as testified to by the witnesses of the appellee, it is not our duty to disturb their findings.

We concur with the statement of the Appellate Court in their opinion to the following effect: "Without stopping to point it out, some of the evidence, given by witnesses for appellee, is more convincing to our minds that appellant fully understood that his son was a co-partner with him in the mercantile business, carried on at Hunt City, than the evidence of other witnesses adduced to establish the contrary.".

For the reasons above stated, the judgment of the Appellate Court, affirming the decree of the circuit court, is affirmed.

· *Judgment affirmed.*

This case was originally assigned to the late Justice PHILLIPS, but as he prepared no opinion, the case has been re-assigned since his death.