Opal Burke, Appellee, v. Weston Molloy, Appellant.

 Opinion filed March 9, 1938.

J. P. STREUBER, of Alton, for appellant.

GREEN, VERLIE & HOAGLAND, of Alton, for appellee; J. F. SCHLAFLY, JR., of Alton, of counsel.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

In the early morning of June 8, 1935, plaintiff appellee, hereinafter called plaintiff, and defendant appellant, hereinafter called defendant, were returning from a dance at Benld, Illinois, to their home in Alton, Illinois. There were with plaintiff and defendant Jean

Schaffer and Leland Kennedy. They were all riding in defendant's car and were there as the invited guests of defendant. On the way home defendant was driving his car at various rates of speed described by the different witnesses at 50, 55 and 60 miles an hour. He was racing in some instances and passed other cars going in the same direction. This was on route 112 which goes south from the city of Bunker Hill to the junction with State route 140. Defendant was admonished on several different occasions to drive more carefully and not so rapidly. At one of these admonitions from plaintiff, defendant took offense after which he and plaintiff spoke no more to each other. The junction of 112 with route 140 is about six or seven miles south of Bunker Hill. For the most part the road is straight and level. Near the junction are several different signs of warning that there is such a junction ahead. Some distance, maybe a thousand feet to a quarter of a mile north of this intersection was a diagonally shaped sign on the right-hand side of the road bearing the words "Danger, Stop-sign Ahead." Farther towards the intersection on the same side of the road was a white colored sign bearing the words "Stop-sign Ahead, Junction 140," while a few feet from the intersection on the same side of the road there was a sign bearing the word "Stop." The original exhibits of the first two of these signs are in the record, certified to this court.

The evidence tends to show that defendant paid no attention to the warnings, and even passed at least one car at a rapid rate of speed, almost immediately before he came to the junction. At the junction itself is a very large sign calling attention to the fact that said junction is there. Defendant did not slow down or stop his car as he approached the junction, but on the contrary crashed on across route 140 where route 112 ends. Serious damages followed among which were

many and serious injuries to plaintiff, which are detailed by the evidence.

Suit was commenced November 26, 1935, by plaintiff against defendant in the city court of Alton, and in the complaint in said suit it was charged that the defendant invited the plaintiff as a guest on the automobile trip; that he had sole and exclusive management, control and operation of his automobile; that he drove recklessly and wantonly at a high rate of speed, more than 60 miles an hour. The complaint also alleges disregard of the warnings of the stop signs along the road, which were close to the intersection of the two routes. It also alleges remonstrances of the plaintiff and request by her to drive more slowly. Defendant's answer was a specific denial of all of the allegations of the complaint. After verdict defendant asked leave to amend his answer and to set up therein that the plaintiff was guilty of wilful and wanton failure to exercise care for her own safety, which contributed to her injury. This leave was denied to defendant.

The jury returned a verdict for plaintiff, assessing her damages at the sum of $5,000. Motion for new trial was denied by the trial court and judgment rendered on the verdict.

Defendant appeals to this court and assigns as error that the court should have directed a verdict for defendant at the close of plaintiff's case, and again at the close of all evidence, erroneous rulings on the admission of evidence, the giving and refusing of instructions, prejudicial conduct of the court bailiff towards counsel for the defendant, the refusal of the court to allow the amendment to defendant's answer; that the verdict is against the manifest weight of the evidence and that the court erred in not granting defendant a new trial.

The court did not err in refusing leave to defendant to amend his answer. It is true that our present stat-

ute of amendments is a liberal one. However, it recites that amendments may be made on terms that are just and reasonable. This offered amendment in our judgment was not reasonable. Anything which impelled defendant to wish this amendment was just as well known to him before verdict as it was after verdict. The amendment if allowed could not possibly have changed the verdict, which was already in. The most that it could have done would have been to persuade the court that new trial should be granted, and one cannot save matters proper to be offered in evidence,—matters which are within his knowledge when it is the proper time to offer evidence, and then after verdict seek to make amendments which would make proper such evidence which he had the opportunity to offer and did not. Again, the offer of this amendment came unreasonably late. Its effect would have been to confuse rather than to assist in the determination of this case. Furthermore, the court had before it all the evidence and probably saw that there was nothing in the conduct of the plaintiff which would at all tend to prove these allegations had they been allowed. The evidence shows that plaintiff as a guest of the defendant remonstrated with him time and again to cease his reckless driving. What more could she have done to insure her own safety and what conduct was she guilty of that would warrant charging her with contributory, wanton and wilful conduct?

As to the motion for judgment *non obstante veredicto,* we find no such motion in this record, notwithstanding the assignment of error on the ruling on such motion.

As to the motions for directed verdict, they could not have been allowed unless the evidence taken with all its reasonable intendments did not reasonably tend to show defendant's guilt. Certainly that could not be said of the evidence in this case. The trial court was

of the opinion that the evidence did tend to show defendant's guilt. It was backed up in that opinion by the actual finding of the jury that the defendant was guilty as charged. While the finding of a jury is not always a perfect criterion, in most instances it does corroborate the court in his judgment that there is evidence which tends to prove the issue. Juries do not ordinarily find verdicts where there is no evidence tending to justify that finding. It was not error to deny the motions for peremptory instructions at the close of plaintiff's evidence and at the close of all the evidence.

Defendant insists that it was error for the court to give the following instruction:

"The court instructs the jury that if you believe from the preponderance of the evidence that the defendant Molloy in the operation of his automobile at the time of and immediately prior to the accident, exhibited such an absence of care for the safety of others, including the plaintiff, as amounted to a conscious indifference to the consequences of his conduct, you may conclude that the defendant's misconduct was willful and wanton.

"The Court further instructs the jury that the question of plaintiff's contributory negligence, if any, is immaterial in this case, and that said contributory negligence, if proved, would not be a defense to this lawsuit." He claims that by this instruction the jury were definitely told that the defendant was guilty of misconduct. We cannot agree with that contention. The instruction merely says that if the defendant at the time of and immediately prior to the accident exhibited such an absence of care for the safety of others, including the plaintiff, as amounted to a conscious indifference to the consequences of his conduct, it may conclude that the defendant's misconduct was wilful and wanton. That language merely repeats to the jury the definition of what is wilful and wanton. The word

"misconduct" reverts back to an absence of care for the safety of others which amounted to a conscious indifference to the consequences of his conduct. The jury is told by that that if the defendant was guilty of such disregard for the safety of others, then it would be misconduct of a character which the law defines as wanton and wilful. Not only is this true, but the conduct or misconduct of the defendant in driving his car is shown in the record and is undisputed, so that if this instruction were subject to the first criticism, it would still be a proper instruction; for it is not error to assume a conceded or undisputed fact established by the evidence. (*Fisher v. Bennehoff,* 121 Ill. 426; *Town of Normal v. Bright,* 223 Ill. 99; *Illinois Cent. R. Co. v. King,* 179 Ill. 91; *Grannon v. Donk Bros. Coal & Coke Co.,* 259 Ill. 350.)

As to the last paragraph of the instruction, such a general instruction only becomes material when it is calculated to confuse and mislead the jury. We are unable to see how the giving of this part of the instruction in the language in which it was given could do that.

Complaint is made by the defendant that the court erred in refusing certain proffered testimony and in allowing the exhibits in question to be admitted in evidence. The testimony complained of and refused was to the effect that plaintiff had on other and different occasions ridden with defendant and knew that he was in the habit of driving his car at the rate of speed at which he was driving that night. Assume that this is true, there is no proof in this record that plaintiff had any reason to suspect that defendant would drive his car at the rate of speed he did under the conditions in which he did so drive it. It is not necessarily dangerous to drive a car 50 or 60 miles an hour on a public highway under proper conditions, but it is exceedingly dangerous to drive it at that rate of speed and to be

passing cars and racing with other cars under conditions which make such conduct extremely hazardous. The proof of the former does not prove the latter, and did not in our judgment put plaintiff on notice that defendant was liable to be guilty of the conduct described by the evidence in this case. We think it was not error to refuse that testimony.

As to the exhibits, the evidence shows that they properly depict the surrounding circumstances where the incidents detailed by the evidence occurred and that testimony must be followed because it is uncontradicted. The mere statement that the pictures were taken too big not borne out by any testimony in the case cannot be considered as an argument against the definite testimony that they do properly show the surroundings.

As to the misconduct of the bailiff, it is the duty of the trial court to see that prejudice or misconduct does not enter into a record on a trial, but the trial court cannot do that unless he has the assistance of counsel. It is the duty of counsel, therefore, to apprise the court at the first opportunity of any misconduct he complains of. Otherwise that court has no opportunity to correct an error if an error has intervened. Counsel cannot speculate in the trial of a case. If in this case defendant felt that he had been prejudiced by the conduct it should have been called to the attention of the court at the first instance and give the court the opportunity to act upon it in a manner that it justified, but it cannot be left until after verdict and then assigned as something which the court should have done which he did not do and did not know about, and, therefore, had no opportunity to correct.

On a consideration of this whole record we are of the opinion that it presented a question of fact for the jury and that no error or prejudice entered into the trial

which would effect the jury in arriving at its verdict. The jury found the facts and the issues for the plaintiff. We see no reason for disturbing that finding.

The judgment of the city court is affirmed.

*Judgment affirmed.*